1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF AARON DANIEL BONIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No. 23-cv-2158-MMA-MSB<br><br>**ORDER GRANTING COUNTY DEFENDANTS' MOTION TO DISMISS; AND**<br><br>[Doc. No. 38]<br><br>**GRANTING CORRECTIONAL HEALTHCARE PARTNERS' MOTION TO DISMISS**<br><br>[Doc. No. 39] |

On May 24, 2024, Plaintiff Barbara Brisson, individually and as successor in interest to the Estate of Aaron Daniel Bonin, filed a First Amended Complaint pursuant to 42 U.S.C. § 1983 against the County of San Diego (the "County"), Kelly Martinez, Anthony Ray, Jon Montgomery, Dina Cruz, Joy Irwin, Correctional Healthcare Partners ("CHP"), and various Does.  Doc. No. 37 ("FAC").  On June 7, 2024, the County, Martinez, Ray, Montgomery, and Irwin (collectively, the "County Defendants") filed a motion to dismiss.  Doc. No. 38.  On that same date, CHP also filed a motion to dismiss. Doc. No. 39.  Plaintiff filed responses in opposition to the motions, *see* Doc. Nos. 43, 44,

to which the County Defendants and CHP replied, *see* Doc. Nos. 45, 46.  The Court found the motions suitable for disposition on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  Doc. No. 47.  For the reasons set forth below, the Court **GRANTS** the County Defendants' motion and **GRANTS** CHP's motion.

## I. <u>BACKGROUND</u>[1]

The factual allegations remain largely unchanged.  On September 1, 2022, Aaron Daniel Bonin ("Mr. Bonin") was transferred from the Department of State Hospitals forensic psychiatric facility in Patton, California to the San Diego Central Jail for civil commitment reconsideration proceedings.  FAC ¶ 25.  Mr. Bonin suffered from severe mental illness and had been civilly committed for over a decade.  *Id.* ¶ 2.  He also suffered from health conditions, including renal disease, which required dialysis two to three times per week and a "renal diet."  *Id.* ¶¶ 2, 28.

On September 26, 2022, Mr. Bonin's potassium level was 6.4 mmol/L, which is "critically high," and he was taken to the hospital for dialysis because the machines at the County jail were not working.  *Id.* ¶ 30.  On October 17, 2022, Mr. Bonin was provided a normal diet, instead of a renal diet, increasing his risk of dangerously high blood potassium level, or hyperkalemia.  *Id.* ¶¶ 31–32.  Plaintiff alleges that Mr. Bonin remained on a normal diet, meaning that potassium rich foods were not excluded.  *Id.* ¶ 35.

On October 19 or 20, Mr. Bonin's bloodwork again revealed a dangerously high blood potassium level: 6.3–6.4 mmol/L.  *Id.* ¶ 33.  Medical staff treated Mr. Bonin with dialysis on October 21, but his potassium levels were not retested after that day.  *Id.* ¶ 34.  Mr. Bonin was scheduled for further dialysis on October 24, 2022.  *Id.* ¶ 37.

On the night of October 23, 2022, Mr. Bonin fell ill.  *Id.* ¶ 36.  At around 11:00 p.m., Mr. Bonin called out for help to the deputies on duty.  *Id.* ¶ 40.  At some point that

---

[1] Because this matter is before the Court on a motion to dismiss, the Court accepts as true the allegations set forth in the Complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

evening, Irwin—a registered nurse—was asked by a deputy to check on Mr. Bonin. *Id.* ¶¶ 15, 41. She found him lying on the floor, and he told her: "I feel like I am having hypotension." *Id.* ¶ 41. Irwin checked his blood pressure, and after confirming his levels were "okay," she left. *Id.* Mr. Bonin continued to feel unwell, and called out for help, begging to go to the hospital. *Id.* ¶ 43. Other detainees attempted to get the deputies' attention, using the call buttons and intercoms, but deputies did not respond. *Id.* ¶ 50. During a routine round, the deputies on duty ignored Mr. Bonin's pleas for help, informing him that "his vitals had been checked and he was fine." *Id.* ¶ 48.

Mr. Bonin's cries for help "fell silent around 3:00 a.m. on October 24, 2022." *Id.* ¶ 55. While conducting routine safety checks, deputies found Mr. Bonin unresponsive on the floor of his cell around 3:16 a.m. *Id.* ¶ 56. Life-saving efforts were employed, and medical staff arrived at 3:23 a.m. *Id.* ¶ 57. Fire Department personnel responded at around 3:31 a.m., and Mr. Bonin was taken and admitted to the University of California, San Diego – Hillcrest hospital in critical condition. *Id.* ¶¶ 59–60.

In the emergency room, Mr. Bonin's blood potassium level was recorded at 8.0 mmol/L. *Id.* ¶ 62. According to medical records, Mr. Bonin had suffered cardiac arrest and "had been down for approximately ten minutes prior to deputies beginning CPR." *Id.* ¶ 61. A subsequent MRI revealed "diffuse hypoxic ischemic injury, which is a brain injury that results from prolonged lack of oxygen." *Id.* ¶ 63. Mr. Bonin was pronounced dead on November 1, 2022. *Id.* ¶ 64.

Plaintiff is Mr. Bonin's mother, *see id.* ¶ 9, and she challenges the actions and inactions of Defendants during the time that Mr. Bonin was in the County's custody. As a result, she brings the following causes of action: (1) as successor in interest, for deliberate indifference in violation of the Fourteenth Amendment against Ray, Montgomery, Martinez, Cruz, and the Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors; (2) as an individual, for violation of the Fourteenth Amendment, substantive due process, against Ray, Montgomery, Martinez, Cruz, and the Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors; (3) as an individual, for

deliberate indifference in violation of the Fourteenth Amendment against the County and CHP pursuant to *Monell*; (4) as an individual, for violation of the Fourteenth Amendment, substantive due process, against the County and CHP pursuant to *Monell*; (5) as successor in interest, for violation of the Bane Act, Cal. Gov. Code § 52.1, against the County, Ray, Montgomery, Martinez, Cruz, and the Doe Deputies, Doe Medical Providers, Doe Deputy Supervisors, and CHP; (6) as successor in interest, for failure to summon medical care, Cal. Gov. Code § 845.6, against the County, Irwin, Ray, Montgomery, Martinez, and the Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors; and (7) as successor in interest, for negligent training and supervision against the County, Ray, Montgomery, Martinez, Doe Deputy Supervisors, and CHP.

## II. LEGAL STANDARD

A motion brought pursuant to Rule[2] 12(b)(6) tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## III. <u>DISCUSSION</u>

The Court previously granted in part the County Defendants' motion to dismiss and granted NaphCare, Inc.'s motion to dismiss. Doc. No. 36. Dismissal was with leave to amend, and the Court noted that any claim not realleged, and any defendant not named, would be considered waived. *Id.* at 33. The Court incorporates that Order by reference here.

Plaintiff sought to cure these deficiencies and filed the First Amended Complaint. *See* FAC. Plaintiff no longer pleads any of her claims against NaphCare and no longer pleads claims for negligence and wrongful death. *Compare* Doc. No. 1 *with* FAC. Therefore, the Court finds that Plaintiff has waived these two claims as well as any claims against NaphCare and **DISMISSES** these claims and NaphCare, accordingly.

The County Defendants now move to dismiss, contending that Plaintiff has failed to cure the deficiencies the Court previously identified in dismissing Plaintiff's failure to summon and negligent training and supervision claims. Doc. No. 38. CHP moves to dismiss all claims against it and the Doe Medical Providers. Doc. No. 39. The Court addresses these claims and arguments in turn.

## A.      Individual Liability – 42 U.S.C. § 1983

First, CHP challenges the sufficiency of Plaintiff's § 1983 claims against the Doe Medical Providers.  Doc. No. 39-1 at 10–13.  Plaintiff asserts two § 1983 claims against the Doe Medical Providers: (Claim 1) Fourteenth Amendment Deliberate Indifference; and (Claim 2) Fourteenth Amendment Substantive Due Process.

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citation omitted).  "To establish § 1983 liability, a plaintiff must show both (1) the deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Here, Plaintiff alleges that Mr. Bonin was deprived of his right to be free from deliberate indifference to his serious medical needs[3] and his right to substantive due process.  CHP does not dispute that Mr. Bonin had serious medical needs or that Plaintiff has a right to companionship and society with her son.  Rather, CHP argues that Plaintiff

---

[3] With respect to Plaintiff's deliberate indifference claim, the Court previously found, "for the limited purpose of resolving" the first round of dismissal motions, that Plaintiff's allegations in the original Complaint called for application of the Eighth Amendment's subject deliberate indifference standard. Doc. No. 36 at 9.  Plaintiff now explicitly alleges that the Fourteenth Amendment objective deliberate indifference standard applies. FAC ¶ 108.  But Plaintiff has not cured her previous failure to plead the necessary allegations surrounding Mr. Bonin's custodial status to support this legal conclusion. *See* Doc. No. 36 at 9 (quoting Doc. No. 28 at 17).  That said, the Court's prior application of the Eighth Amendment standard is not the "law of the case," Doc. No. 39-1 at 10, because the Court did not make any ruling in this respect and explicitly limited the scope of its application of this standard.  The Court notes that this issue remains unresolved as a matter of law and the parties should be prepared to put forward proper evidence and argument on this issue at summary judgment.  And for the limited purpose of resolving the present motion to dismiss, the Court assumes on this record that the Fourteenth Amendment objective deliberate indifference standard applies to Plaintiff's claim.

fails to plead sufficient facts to plausibly demonstrate that the Doe Medical Providers deprived Mr. Bonin of these two Fourteenth Amendment rights.

Section 1983 is the vehicle for suing individuals acting under color of state law for their actions that deprive another of their constitutional rights. Thus, "[i]n order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Here, Plaintiff names "Medical Providers Does 1-10" as defendants in this action. *See, e.g.*, FAC ¶ 21; *id.* at 2.[4] According to Plaintiff, these Doe Medical Providers are "County employees, agents, or contractors working within the Sheriff's Department Medical Services Division who were responsible for Aaron's medical care, . . . ." FAC ¶ 21. Elsewhere, Plaintiff alleges that CHP employed, supervised, and/or trained these Doe Medical Providers. *Id.* ¶ 16.

There are four allegations against the Doe Medical Providers in the factual portion of the First Amended Complaint:

> 16. Defendants CHP employed, supervised, and/or trained Defendant Medical Provider Does 1-10.

> 21. Defendant Medical Providers Does 1-10 (hereinafter "Doe Medical Providers") are all County employees, agents, or contractors working within the Sheriff's Department Medical Services Division who were responsible for Aaron's medical care, including follow-up assessments and referrals for further treatment, whether or not they actually provided Aaron with any medical care. To the extent Doe Medical Providers were employees of the County, they were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint. To the extent Doe Medical Providers were third-party contractors to the County through their employment with CHP (or any other third-party contractor), they were acting within the scope of their employment with said third-party contractor.

---

[4] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

22. Doe Deputies and Doe Medical Providers are sued in their individual capacities for the purposes of claims arising under § 1983 and as County employees, or employees of third-party contractors such as CHP, for the purposes of claims arising under state law.

23. Plaintiff are ignorant of the true names of all Doe Deputies, Doe Deputy Supervisors, and Doe Medical Providers despite due diligence and will amend the Complaint to add their true names upon learning them.

FAC ¶¶ 16, 21–23.

In support of Claim 5, Plaintiff pleads that "Pursuant to Cal. Gov. Code § 815.2, the County is vicariously liable for the actions and/or omissions of its employees, contractors, or agents, Defendants Cruz, Ray, Montgomery, Martinez, Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors because they were acting within the scope of their employment." *Id.* ¶ 156.  And as to Claim 6, Plaintiff lodges five allegations in support of the Doe Medical Providers' liability for failure to summon. *Id.* ¶¶ 160–64.

This is the entirety of Plaintiff's allegations against the Doe Medical Providers and is insufficient to state § 1983 claims against them.  As the Court previously noted, the use of Doe pleading is generally disfavored in federal court.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, in circumstances where the identity of the defendants is not known prior to the filing of a complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

That said, Plaintiff must still provide a plausible factual basis for holding each of these unnamed persons liable; "Plaintiffs may refer to unknown defendants as 'Does' at this stage, [but] must nevertheless allege specific facts showing how each particular doe defendant violated [her] rights." *Lomeli v. Cnty. of San Diego*, 637 F. Supp. 3d 1046, 1057 (S.D. Cal. 2022) (internal quotation marks and citations omitted).  Plaintiff's allegations fall well short of stating Fourteenth Amendment claims against ten unknown

medical providers.  Beginning with Claim 1, the elements of a Fourteenth Amendment deliberate indifference claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Plaintiff does not plead, for example, what intentional decisions these Doe Medical Providers made.  In response, Plaintiff contends that she "alleges in great detail how Aaron failed to receive timely or meaningful medical care over the course of the month and half he was detained at the Central Jail."  Doc. No. 43 at 11.  But these allegations, FAC ¶¶ 25–65, are devoid of any participation by any Doe Medical Provider.  As the Court previously noted, "Plaintiff's repetitive collective pleading of the actions and inactions of 'Defendants,' . . . without specifying which Defendant(s) she is referring, is problematic."  Doc. No. 36 at 6–7.  And Plaintiff has not cured this deficiency. Moreover, contrary to Plaintiff's assertion, she does not plead that the Doe Medical Providers were involved in the alleged failures with respect to Mr. Bonin's renal diet. Doc. No.  43 at 11 (citing FAC ¶¶ 28–38).

With respect to Plaintiff's substantive due process claim, Plaintiff pleads that she was deprived her of her right to companionship and society with her son.  FAC ¶ 118. But she does not plead how the Doe Medical Providers personally participated in this deprivation, nonetheless that their conduct "shocks the conscience" or "offend[s] the community's sense of fair play and decency."  *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (citing *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). And Plaintiff does not defend the sufficiency of this claim in opposition to CHP's motion to dismiss.

"Federal courts will dismiss claims against Doe Defendants when the complaint—especially for § 1983 suits—does not 'even minimally explain how any of the unidentified parties [the plaintiff] seeks to sue personally caused a violation of [the plaintiff's] constitutional rights.'" *Lomeli*, 637 F. Supp. 3d at 1057 (quoting *Estate of Serna v. Cnty. of San Diego*, No. 20cv2096-LAB-MSB, 2022 U.S. Dist. LEXIS 49118, at *8 (S.D. Cal. Mar. 18, 2022) (itself quoting *Cavanaugh v. Cnty. of San Diego*, Case No. 3:18-cv-02557-BEN-LL, 2020 U.S. Dist. LEXIS 212779, at *76, n.20 (S.D. Cal. Nov. 12, 2020))); *see also Estate of William Hayden Schuck v. Cnty. of San Diego*, et al., No. 23-cv-785-DMS-AHS, 2024 U.S. Dist. LEXIS 22653, at *16 (S.D. Cal. Feb. 8, 2024). Here, the Court finds that Plaintiff fails to plausibly plead how each or any of the Doe Medical Providers deprived her and Mr. Bonin of their Fourteenth Amendment rights. Accordingly, the Court **GRANTS** CHPS's motion and **DISMISSES** Claims 1 and 2 against the Doe Medical Providers.

**B.      Municipal Liability Under *Monell***

CHP also seeks dismissal of Plaintiff's third and fourth causes of action, which she brings against CHP pursuant to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). *Monell* provides that a local governmental entity:

> may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)). In order to establish liability for governmental entities under *Monell*, a plaintiff must prove: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy;

(3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  A single occurrence of unconstitutional action by a non-policy making employee is insufficient to establish the existence of an actionable municipal policy or custom.  *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989).  "Only if a plaintiff shows that his injury resulted from a permanent and well settled practice may liability attach for injury resulting from a local government custom."  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (internal quotation marks and citation omitted), *overruled on other grounds by Bull v. City & Cnty. of San Fransisco*, 595 F.3d 964, 981 (9th Cir. 2010).  The *Monell* standard applies to § 1983 suits against private entities acting under color of state law.  *See Tsao*, 698 F.3d at 1139 ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law.").

The Court previously assessed the plausibility of the policies Plaintiff identified and considered whether Plaintiff sufficiently alleged that these policies were the moving force behind the deprivation of Plaintiff's and Mr. Bonin's rights.  Doc. No. 36 at 18–20. Plaintiff did not attempt to cure the deficiencies but instead has removed the deficient policies from her pleading.  *Compare* Doc. No. 1 ¶ 74 *with* FAC ¶ 77.  Otherwise, the allegations in support of her *Monell* claims are substantively identical to those in the original Complaint.

For the same reasons the Court dismissed Plaintiff's *Monell* claims against NaphCare, Doc. No. 36 at 20–21, the Court finds her claims are subject to dismissal as against CHP.  Plaintiff has failed to plead that any CHP employee personally participated in the events leading to Mr. Bonin's death.  And Plaintiff's summary pleading against the County and CHP, for example, that the County and CHP have the same policies, is not sufficient.  FAC ¶¶ 128–132, 146–47.

In opposition, Plaintiff contends that her claims against CHP should survive based upon the alleged liability of the Doe Medical Providers. Doc. No. 43 at 13. But Plaintiff has not sufficiently pleaded that any Doe Medical Provider was involved in the asserted deprivation of rights. And even assuming she had, she does not plead that these persons were employees of CHP as opposed to County employees or employees of some other contractor. FAC ¶ 21 (alleging in the alternative that the Doe Medical Providers are either employees of the County or "third-party contractors to the County through their employment with CHP (or any other third-party contractor), . . ."); *see also id.* ¶ 22 (alleging that the Doe Medical Providers were either "County employees, or employees of third-party contractors such as CHP . . .").

Further, even assuming Plaintiff had stated a claim against a Doe Medical Provider that was a CHP employee, Plaintiff does not plausibly plead that their actions were pursuant to a CHP policy. First, based upon Plaintiff's own pleading, medical staff deviated from the County's Medical Services Department policies, FAC ¶¶ 31, 38, 47, which tends to undermine the plausibility of her claim that any CHP employee who participated in the deprivation of rights did so pursuant to CHP policy. Moreover, Plaintiff does not plausibly plead that the policies identified belong to CHP. Plaintiff pleads that CHP was a subcontractor who, through its contractual relationship with NaphCare, began providing medical care staffing and on-site medical services at the County jail in 2022. FAC ¶ 17. Plaintiff alleges that in 2022, nineteen people died in the County jails and at least thirteen people died in 2023. FAC ¶ 80. Many of the factual allegations pre-date CHP's 2022 subcontract. FAC ¶¶ 66, 68–75. Plaintiff also only identifies one other in-custody death during the time of CHP's subcontract. *Id.* ¶ 83. These allegations are not sufficient to plausibly connect CHP to the asserted policies.

Because Plaintiff fails to plead that any CHP employee, acting pursuant to CHP policy, deprived Mr. Bonin and Plaintiff of their Fourteenth Amendment rights, the Court finds that Plaintiff has failed to state her *Monell* claims against CHP. Accordingly, the Court **GRANTS** CHP's motion and **DISMISSES** Plaintiff's *Monell* claims against CHP.

**C.    Bane Act Claim**

Next, CHP moves to dismiss Plaintiff's Bane Act claim on the grounds that she has failed to state a claim of deliberate indifference against CHP or any CHP employee.  Doc. No. 39-1 at 15–16.  The Bane Act prohibits the interference or attempted interference with constitutional rights by threat, intimidation, or coercion.  Cal. Gov. Code § 52.1.  Although Plaintiff may rely on Defendants' alleged deliberate indifference to state a Bane Act claim against them, FAC ¶¶ 151–54, the latter rises and falls with the former.  Accordingly, the Court agrees with CHP that because Plaintiff fails to plead her deliberate indifference claims against any CHP employee or CHP, she has not stated a Bane Act claim.  The Court therefore **GRANTS** CHP's motion and **DIMISSES** Plaintiff's Bane Act claim against CHP.

**D.    Failure to Summon Medical Care**

Both CHP and the County Defendants move to dismiss Plaintiff's sixth claim, which is for failure to summon in violation of California Government Code § 845.6.  The Court previously dismissed this claim in its entirety because Plaintiff failed to plead that any defendant had actual or constructive knowledge that Mr. Bonin needed immediate medical attention and unreasonably failed to summon care.  Doc. No. 36 at 22–25.  The County Defendants argue that Plaintiff has not cured the deficiencies, Doc. No. 38-1 at 7–9.  CHP also moves to dismiss this claim because it is not a public entity and because Plaintiff fails to plead that any CHP employee failed to summon care.  Doc. No. 39-1 at 16–17.

In opposition to CHP's motion, Plaintiff states that she "do[es] not oppose the dismissal, without prejudice, of Doe Medical Providers to the extent they are CHP employees and not County employees."  Doc. No. 43 at 14.  Based upon this concession, the Court **GRANTS** CHP's motion and **DIMISSES** Plaintiff's failure to summon claim against the Doe Medical Providers to the extent they are CHP employees.

Regardless of whether the Doe Medical Providers are CHP employees, however, the Court still finds this claim is subject to dismissal in its entirety because the Court

agrees with the County Defendants that Plaintiff has not cured the previously identified deficiencies.

Plaintiff pleads her failure to summon claim against the County, Irwin, Ray, Montgomery, Martinez, and the Doe Deputies, Doe Medical Providers, and Doe Deputy Supervisors. California Government Code § 845.6 immunizes public entities and public employees from liability for injuries "proximately caused by the failure to furnish or obtain medical care for a prisoner in his custody." Cal. Gov. Code § 845.6. However, a narrow exception to this immunity is the one baked into its text:

> but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

*Id.*

Pursuant to this exception, a failure to summon medical care claim requires a showing that: (1) "the employee is acting within the scope of his [or her] employment"; (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care"; and (3) "he [or she] fails to take reasonable action to summon such medical care." *Villarreal v. Cnty. of Monterey*, 254 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017).

The Court previously noted that Plaintiff's collective pleading of all Defendants' knowledge was implausible and not factually supported. Doc. No. 36 at 23. Plaintiff still does not plead facts tending to show that Ray, Martinez, Montgomery, the Doe Medical Providers, or Doe Deputy Supervisors knew or had reason to know that Mr. Bonin was in need of immediate medical care on the night of October 23 and failed to take reasonable action. In opposition, Plaintiff argues that the Does Deputies have access to the jail information system, which along with other records, "would have informed the Does Deputies about Araon's [sic] civil commitment and medical needs." Doc. No. 44 at 9.

1 But this argument misses the point.  The question is not whether Defendants knew or

2 should have known of Mr. Bonin's medical needs as a general matter but whether they

3 knew or had reason to know that Mr. Bonin was in the midst of a medical crisis on the

4 night of October 23.  Further, as the Court previously explained, "based upon Plaintiff's

5 pleading, at least one Doe Deputy did summon medical care," and "the obligation set

6 forth in § 845.6 'does not extend to furnishing, monitoring, follow-up, or subsequent care

7 for the same condition for which care was originally summoned."  Doc. No. 36 at 24

8 (first citing Doc. No. 1 ¶ 42; and then quoting *Estate of Prasad v. Cnty. of Sutter*, 958 F.

9 Supp. 2d 1101, 1117 (E.D. Cal. 2013)).

10         Plaintiff now argues:

12         It was clear to the Doe Deputies that Aaron's suffering was not based on the
           same condition for which care was originally summoned because Aaron
13         pleaded to go to the hospital, he became desperate in his pleas, and other
           inmate reported to the Deputies that Aaron's condition had worsened and that
14         he needed immediate treatment.

16 Doc. No. 44 at 9.

17         But this argument is not factually supported by any allegations in the First

18 Amended Complaint.  True, Plaintiff added in words and phrases to preexisting

19 paragraphs to bolster the point that Mr. Bonin's pleas became more desperate, and that

20 his condition worsened.  FAC ¶¶ 48–49, 54.  But there are no factual allegations to

21 plausibly suggest that Mr. Bonin's pleas after Irwin's visit were based on a new condition

22 triggering a new duty to summon care.

23         As to Montgomery, Ray, and Martinez, Plaintiff explains in opposition that they

24 may be held liable for their own "negligent supervision and training as to when to

25 summon medical care."  Doc. No. 44 at 9.  Assuming that is true, this allegation would

26 seem to be subsumed by Plaintiff's negligent training and supervision claim.  And

27 assuming it is not, Plaintiff has not stated a failure to summon claim against any County

28 employee and therefore, has not plausibly pleaded that these individuals failed to

supervise and train their employees on when to summon medical care. *See Pajas v. Cty. of Monterey*, No. 16-CV-00945-LHK, 2016 U.S. Dist. LEXIS 88955, at *39 (N.D. Cal. July 8, 2016) ("Plaintiffs still must allege facts showing that 'a public employee, acting within the scope of his or her employment, failed to take reasonable action to summon medical care.'").

As to Irwin, Plaintiff now pleads:

45. On information and belief, Nurse Irwin did not review and/or ignored Aaron's medical record. Aaron's medical record would have revealed to Irwin that Aaron suffered from renal disease, as well as severe mental health diagnoses which resulted in his civil commitment years prior. She knew or should have known Aaron required dialysis two to three times per week, required a "renal diet" and had dangerously high blood potassium levels. This would have told her to at minimum check his blood potassium levels and refer him to dialysis treatment that was available in San Diego Central Jail clinic.

46. Instead of taking Aaron to the hospital for treatment and monitoring, to the clinic for dialysis treatment, or closely monitoring him, Irwin only checked his blood pressure and made a deliberate choice not to assess his other vital signs or summon a doctor or nurse practitioner.

FAC ¶¶ 45–46.

Plaintiff also argues that Irwin "should have immediately referred him to dialysis treatment." Doc. No. 44 at 8. But any failure by Irwin to either summon further assistance or medical personnel or take action to refer Mr. Bonin to dialysis does not fall within the scope of California Government Code § 845.6 because "the failure of [ ] public employees to provide further treatment, or to ensure further diagnosis or treatment, or to monitor [plaintiff] or follow up on his progress, are all facts which go to the reasonableness of the medical care provided, but do not constitute a failure to summon medical care." *Castaneda v. Dep't of Corr. & Rehab.*, 151 Cal. Rptr. 3d 648, 664 (Cal. Ct. App. 2013); *Prasad*, 958 F. Supp. 2d at 1117 (explaining that the obligation set forth in § 845.6 "does not extend to 'furnishing, monitoring, follow-up, or subsequent care for the same condition' for which care was originally summoned") (quoting *Castaneda*, 151

Cal. Rptr. 3d at 666); *Lapachet v. Cal. Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1197 (E.D. Cal. 2018) ("California law is clear that inadequate medical treatment does not provide the basis for asserting a claim under § 845.6 as long as medical treatment was in fact provided."). Again, the Court finds that, on these facts, Plaintiff's allegations challenge the adequacy of the care summoned and therefore do not state a claim under California Government Code § 845.6.

Further, because Plaintiff fails to state her failure to summon claim against any County employee, she fails to state this claim against the County.

For these reasons, the Court **GRANTS** CHP's and the County Defendants' motions to dismiss and **DISMISSES** Plaintiff's failure to summon claim in its entirety.

## F.   Negligent Training and Supervision

Finally, the County and CHP move to dismiss Plaintiff's negligent training and supervision claim, which she pleads against the County, Ray, Montgomery, Martinez, the Doe Deputy Supervisors, and CHP. The Court previously dismissed this claim as pleaded against NaphCare because Plaintiff did not plead any facts particular to any NaphCare employee and therefore did not state a claim for negligent training and supervision against NaphCare. Doc. No. 36 at 27–28. As to the County Defendants, the Court dismissed this claim because Plaintiff's allegations indicated that Mr. Bonin was a "prisoner," and the County Defendants are statutorily immune from liability for any failure to furnish or obtain medical care for prisoners. *Id.* at 28–29.

Plaintiff has not cured these deficiencies. Similar to NaphCare, Plaintiff does not plead any facts particular to any CHP employee and therefore she has failed to state a negligent training and supervision claim against CHP. Plaintiff also pleads no facts tending to show that Mr. Bonin was not a "prisoner" as contemplated by the California Government Code or that her claim is not "wholly premised on the Individual Defendants' various failures with respect to providing and securing Mr. Bonin medical care." *Id.* at 30. Accordingly, as pleaded, the statutory immunity provisions apply to Plaintiff's claim.

Moving to dismiss this claim, the County Defendants argue that there is no special relationship between them and Mr. Bonin.  Doc. No. 38-1 at 9–10.  Plaintiff contends that she has adequately pleaded that Defendants are jailers and that this claim may be based upon negligent training and supervision related to the failure to summon medical care. Doc. No. 44 at 10–11.

It is not clear how these "special relationship" allegations, FAC ¶¶ 173–76 or arguments bear on the immunity analysis, which was the reason the Court previously dismissed this claim.  California's general duty of care, Cal. Gov. Code § 1714, and vicarious liability, *id.* § 815.2, provisions are modified by California Government Code § 845.6, which limits the liability of public entities and their employees for injuries to prisoners as a result of an employee's failure to furnish or obtain medical care for the prisoner.  As relevant here, the only exception is the failure to summon care, for which both the entity and employee may be held liable.  *Id.*

To the extent Plaintiff premises her negligent training and supervision claim on a failure to train and supervise employees on when to summon care, it appears that other courts have held such a claim is encompassed by the narrow exception to immunity.  *See Villarreal*, 254 F. Supp. 3d at 1187 ("Prison officials may also be liable for their employees' failure to summon medical care under California Government Code § 845.6 for negligent supervision and training as to when to summon medical care.") (citing *Resendiz v. Cnty. of Monterey*, 2015 U.S. Dist. LEXIS 86034, 2015 WL 3988495, at *8 (N.D. Cal. June 30, 2015)).  But because Plaintiff has not pleaded that any individual failed to summon medical care, she similarly fails to plead that any Defendant failed to adequately supervise and train their employees on when to summon care.  Accordingly, the Court **GRANTS** CHP's and the County Defendants' motions and **DISMISSES** Plaintiff's negligent training and supervision claim.

## IV. CONCLUSION

Based upon the foregoing, the Court **GRANTS** the County Defendants' motion to dismiss and **GRANTS** CHP's motion to dismiss.  The Court notes that Plaintiff has

voluntarily dismissed her negligence and wrongful death claims and all claims against NaphCare and so the Court **DISMISSES** these claims and NaphCare, accordingly.  The Court further **DISMISSES** the following: Claims 1 and 2 against the Doe Medical Providers; Claims 3, 4, and 5 against CHP; and Claims 6 and 7 in their entirety.  Dismissal is with leave to amend.  Should Plaintiff wish to file an amended complaint, she must do so on or before **November 4, 2024**.  Defendants may then respond within the time prescribed by Federal Rule of Civil Procedure 15.  Any defendants not named and any claim not realleged in the amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated:  October 7, 2024

HON. MICHAEL M. ANELLO
United States District Judge