UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF AARON DANIEL BONIN, et al.,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  23cv2158-LL-MSB

**ORDER DENYING DEFENDANT JOY DAVID'S MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

[ECF No. 87]

Before the Court is Defendant Joy David's ("David" or "Defendant") Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss" or "Motion"). ECF No. 87. Plaintiff Barbara Brisson, individually and as successor in interest to the Estate of Aaron Daniel Bonin, filed an opposition to the Motion, to which Defendant replied. ECF Nos. 89, 90. The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1(d)(1). For the reasons stated below, the Court **DENIES** David's Motion to Dismiss.

23cv2158-LL-MSB

## I.   BACKGROUND

The parties are well versed in the factual and procedural history of this case. On September 1, 2022, Aaron Daniel Bonin ("Mr. Bonin") was transferred from the Department of State Hospitals forensic psychiatric facility in Patton, California to the San Diego Central Jail (the "Jail") for civil commitment reconsideration proceedings. ECF No. 80 ("Third Amended Complaint" or "TAC") ¶ 31. Mr. Bonin suffered from severe mental illness and had been civilly committed for over a decade. *Id.* ¶ 2. He also suffered from health conditions, including renal disease, which required dialysis two to three times per week and a "renal diet." *Id.* ¶¶ 2, 34.

On September 26, 2022, Mr. Bonin's potassium level was 6.4 mmol/L, which is "critically high," and he was taken to the hospital for dialysis because the machines at the Jail were not working. *Id.* ¶ 36. Plaintiff alleges that beginning on October 17, 2022, staff at the Jail allowed Mr. Bonin to have a normal diet instead of a renal diet. *Id.* ¶ 37–39. On October 19 or 20, Mr. Bonin's bloodwork again revealed a dangerously high blood potassium level: 6.3–6.4 mmol/L. *Id.* ¶ 41. Medical staff treated Mr. Bonin with dialysis on October 21, but his dialysis was cut short that day. *Id.* ¶ 45. Mr. Bonin's potassium levels were not retested, and he did not receive dialysis, after October 21. *Id.* ¶ 74–75.

Mr. Bonin fell ill on the night of October 23, 2022. *Id.* ¶¶ 37–43, 84. At around 10:00 p.m. that evening, a nurse was asked by a deputy to check on Mr. Bonin. *Id.* ¶ 89. She found him lying on the floor, and he told her: "I feel like I am having hypotension." *Id.* The nurse checked Mr. Bonin's blood pressure, and after confirming his levels were "okay," she left. *Id.* Mr. Bonin continued to feel unwell and a few hours later he called out for help, begging to go to the hospital. *Id.* ¶¶ 91–92. Throughout the night, Mr. Bonin's pleas were ignored. *Id.* ¶¶ 97–100.

Mr. Bonin's cries for help "fell silent around 3:00 a.m. on October 24, 2022." *Id.* ¶ 102. While conducting routine safety checks, deputies found Mr. Bonin unresponsive on the floor of his cell around 3:16 a.m. that morning. *Id.* ¶ 105. Life-saving efforts were employed, and medical staff arrived at 3:23 a.m. *Id.* ¶ 106. Fire Department personnel

23cv2158-LL-MSB

responded at around 3:31 a.m., and Mr. Bonin was taken and admitted to the University of California, San Diego – Hillcrest hospital in critical condition. *Id.* ¶¶ 108, 128.

In the emergency room, Mr. Bonin's blood potassium level was recorded at 8.0 mmol/L. *Id.* ¶ 130. According to medical records, Mr. Bonin had suffered cardiac arrest and "had been down for approximately ten minutes prior to deputies beginning CPR." *Id.* ¶ 129. A subsequent MRI revealed "diffuse hypoxic ischemic injury, which is a brain injury that results from prolonged lack of oxygen." *Id.* ¶ 131. Mr. Bonin was pronounced dead on November 1, 2022. *Id.* ¶ 132.

Plaintiff is Mr. Bonin's mother, *see id.* ¶ 9, and she brings this action challenging the actions and inactions of various individuals during the time that Mr. Bonin was at the Jail. In the TAC, Plaintiff alleges the following six claims: (1) as successor in interest, for deliberate indifference in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) as an individual, for violation of the Fourteenth Amendment, substantive due process pursuant to 42 U.S.C. § 1983; (3) as an individual, for deliberate indifference in violation of the Fourteenth Amendment pursuant to *Monell*; (4) as an individual, for violation of the Fourteenth Amendment, substantive due process, pursuant to *Monell*; (5) as successor in interest, for violation of the Bane Act, Cal. Gov. Code § 52.1; and (6) as an individual for wrongful death.

## II.   LEGAL STANDARDS

Rule 12(b)(6)[1] permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-

---

[1] The term "Rule" refers to the Federal Rules of Civil Procedure, unless otherwise indicated.

23cv2158-LL-MSB

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

When a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). The Court may deny leave to amend where an amendment would be futile. *Desoto*, 957 F.2d at 658 (citation omitted).

/ / /

23cv2158-LL-MSB

## III.   DISCUSSION

As a preliminary matter, the Court briefly recounts the history of this case. The operative complaint before the Court is Plaintiff's fourth pleading. Plaintiff's initial Complaint [ECF No. 1] and First Amended Complaint [ECF No. 37] were challenged by motions to dismiss [ECF Nos. 19, 24, 38, 39]. The Court granted in part the motions in two prior dismissal orders, which the Court incorporates by reference here. ECF Nos. 36 (the "First Dismissal Order") and 52 (the "Second Dismissal Order"). Thereafter, Plaintiff filed her Second Amended Complaint [ECF No. 60] to which the remaining named defendants answered [ECF No. 61]. Then, on the deadline to seek leave to amend, Plaintiff filed her Third Amended Complaint, naming previously unidentified defendants, such as David. *See* ECF Nos. 76, 80. Although David has only just been named as a defendant in this case, Plaintiff previously pleaded claims against him as Medical Provider Doe 1, a nurse working at the Jail in October 2022. TAC ¶ 21. David now moves to dismiss Plaintiff's deliberate indifference (Claim 1), substantive due process (Claim 2), and Bane Act (Claim 5) claims against him. ECF No. 87 at 4–7.[2] David also challenges Plaintiff's claim for punitive damages. *Id.* at 7–9.  The Court addresses his arguments in turn.

### A.     Deliberate Indifference (Claim 1)

First, David moves to dismiss Plaintiff's deliberate indifference claim. While he recognizes that Plaintiff's claim is pleaded pursuant to the Fourteenth Amendment, he nevertheless appears to apply the Eighth Amendment's subjective standard. ECF No. 87 at 4 n.3, 5. In opposition, Plaintiff argues that her claim is governed by the Fourteenth Amendment's objective standard. ECF No. 89 at 13.

In the First Dismissal Order, the Court noted that Plaintiff's allegations did not sufficiently make clear whether the Eighth or Fourteenth Amendment applied to her deliberate indifference claim. ECF No. 36 at 8–9. At that time, the Court assumed based

---

[2] Citations to page numbers in docketed materials refer to the CM/ECF page number printed at the top of each page.

on Plaintiff's allegations in the Complaint and arguments against dismissal that Mr. Bonin was not a pretrial detainee and therefore that the Eighth Amendment subjective deliberate indifference standard applied "for the limited purpose of resolving the present motion to dismiss." *Id.* at 9. Then, because Plaintiff expressly pleaded in her First Amended Complaint that the Fourteenth Amendment's objective deliberate indifference standard applied to civilly committed individuals, such as Mr. Bonin, in the Second Dismissal Order the Court applied the Fourteenth Amendment standard to her claim, again "for the limited purpose of resolving the present motion to dismiss." ECF No. 52 at 6 n.3. The Court observed, however, that the issue remained unresolved. *Id.*

Based upon Plaintiff's pleading and opposition, the Court again presumes that the Fourteenth Amendment provides the relevant standard for Plaintiff's deliberate indifference claim. TAC ¶ 178; ECF No. 89 at 13. And again, the Court reminds the parties that they should be prepared to put forth evidence and argument on this issue at summary judgment.

The elements of a Fourteenth Amendment deliberate indifference claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

According to Plaintiff, David was as a dialysis nurse for Mr. Bonin at the Jail on October 21, 2022. TAC ¶¶ 21, 55. On that day, Mr. Bonin "insisted upon ending his dialysis early—a little over three hours into it." *Id.* ¶ 56. Plaintiff alleges that David did not properly counsel Mr. Bonin on the risks of ending dialysis early. *Id.* ¶ 67. Further, David allegedly ended Mr. Bonin's dialysis early despite knowing from the medical records that Mr. Bonin was under an Involuntary Medication Order ("IMO") and had been refusing to take

23cv2158-LL-MSB

medication for his psychiatric conditions. *Id.* ¶ 57. She also pleads that David was aware that Mr. Bonin's potassium level would still be dangerously elevated as a result of ending dialysis early and that failing to dialyze Mr. Bonin to a normal potassium level was life-threatening. *Id.* ¶¶ 59, 71. Additionally, Plaintiff contends that David failed to enter any notes regarding his encounter with Mr. Bonin that day and therefore failed to properly notify other medical staff that Mr. Bonin had refused to complete treatment. *Id.* ¶¶ 61–63, 68–69. She pleads that David was required to refer Mr. Bonin to be seen by a physician or psychiatrist for refusing treatment by scheduling a "sick call" but David similarly failed to do so. *Id.* ¶¶ 64–65. According to Plaintiff, David knew that by failing to update Mr. Bonin's medical record, staff would not have the necessary information to properly treat Mr. Bonin and that he could die as a result of a lack of continuity of care. *Id.* ¶ 72. Moreover, Plaintiff contends that David never re-tested Mr. Bonin's potassium levels after dialysis that day and he never attempted to provide Mr. Bonin with further dialysis. *Id.* ¶¶ 74–75.

The Court finds these allegations sufficient to state a Fourteenth Amendment deliberate indifference claim. Accepting these facts as true, David knew Mr. Bonin's potassium levels were critically high when he presented for dialysis on October 21 and yet David made the intentional decision to end Mr. Bonin's dialysis early. Although it was Mr. Bonin who insisted on ending early, David was aware Mr. Bonin was under an IMO and being treated for psychiatric conditions. Further, David, as a nurse, was aware that Mr. Bonin faced a serious risk of harm or death if his blood was not dialyzed to a normal potassium level. David failed to take reasonable measures to abate this risk: David did not update Mr. Bonin's records to reflect he had not completed treatment and did not schedule a "sick call" based on Mr. Bonin's refusal to do so. According to Plaintiff, David knew that medical staff would not be able to properly care for Mr. Bonin without knowing he had not been properly dialyzed. It is plausible on this record that a reasonable nurse under these circumstances would have appreciated the high risk of injury or death by ending Mr. Bonin's dialysis early and failing to update his medical records accordingly. For this

23cv2158-LL-MSB

reason, the Court finds that Plaintiff plausibly pleads facts in support of her Fourteenth Amendment deliberate indifference claims and therefore **DENIES** David's Motion.

### B. Substantive Due Process (Claim 2)

David also seeks dismissal of Plaintiff's second claim, for violation of her substantive due process rights. ECF No. 87 at 2 (requesting that the Court dismiss Plaintiff's second cause of action); *id.* at 87-1 at 2 (same). However, substantively, David does not argue this claim is subject to dismissal. Nevertheless, the Court finds that Plaintiff adequately pleads her substantive due process claim. As the Court explained in its prior Dismissal Orders, "[t]he substantive due process right to family integrity or to familial association is well established." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011); *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir. 1985) (explaining that "the Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship" and that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child"); *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010) ("The Fourteenth Amendment's Due Process Clause protects parents' well-established liberty interest in the companionship, care, custody, and management of [their] children.") (internal quotation marks and citation omitted). "[A] parent has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child . . . ," *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (citation omitted) (alteration in original), and "[a] state may not interfere with this liberty interest," *Rosenbaum*, 663 F.3d at 1079 (citing *Kelson*, 767 F.2d at 655). To amount to a violation of substantive due process the harmful conduct must "shock[ ] the conscience" or "offend the community's sense of fair play and decency." *Id.* (citing *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). The appropriate test to determine whether a state actor's conduct "shocks the conscience" turns on whether the officers had time to deliberate their conduct. *Ochoa*, 26 F.4th at 1056. The deliberate indifference test applies if the situation at issue "evolve[d] in a time frame that permits the officer to deliberate before acting." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008);

23cv2158-LL-MSB

*see also Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Alternatively, the purpose-to-harm test applies if the situation at issue "escalate[d] so quickly that the officer [had to] make a snap judgment." *Id.*

Here, Plaintiff's pleading of the circumstances involving David do not illustrate a quickly evolving situation requiring him to make a snap judgment and, accepting Plaintiff's allegations as true, David "had adequate time to reflect and reason prior to acting or failing to act." TAC ¶ 189. The Court therefore considers the sufficiency of Plaintiff's pleading under the deliberate indifference standard. As discussed, Plaintiff alleges that David knew Mr. Bonin's blood potassium level was dangerously high and that he was suffering from psychiatric conditions requiring an IMO. Despite being aware of Mr. Bonin's condition, David ended Mr. Bonin's dialysis early without updating his medical records to reflect as much or schedule a "sick call" as was required based upon Mr. Bonin's failure to complete treatment. According to Plaintiff, David as a nurse knew that by failing to dialyze Mr. Bonin to normal potassium levels and failing to update Mr. Bonin's records to reflect that he had not been properly dialyzed, Mr. Bonin could die. These allegations, if true, plausibly rise to the requisite level to state a Fourteenth Amendment substantive due process claim. Consequently, to the extent David seeks dismissal of Plaintiff's second claim, the Court **DENIES** his Motion.

### C.   Bane Act Claim (Claim 5)

Next, David asks the Court to dismiss Plaintiff's fifth claim, for violation of the Bane Act, Cal. Gov. Code § 52.1. The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civ. Code § 52.1(a); *see also Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (explaining that the Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion'") (quoting

*Venegas v. Cnty. of Los Angeles*, 63 Cal. Rptr. 3d 741, 748 (Cal. Ct. App. 2007)). Many district courts have recognized that allegations of "a defendant's deliberate indifference to a plaintiff's serious medical needs suffices to state a claim under the Bane Act because of the coercion, or specific intent, inherent in the deliberate indifference standard." *Greer v. Cty. of San Diego*, No. 3:19-CV-0378-GPC-AGS, 2021 U.S. Dist. LEXIS 29224, at *27 (S.D. Cal. Feb. 16, 2021) (collecting cases).

Here, David argues that Plaintiff's Bane Act claim is subject to dismissal because it is reliant on her claim for deliberate indifference, which fails. ECF No. 87 at 7. However, the Court finds that Plaintiff has plausibly stated a Fourteenth Amendment deliberate indifference claim against David and for this reason her claim under the Bane Act survives dismissal as well. Accordingly, the Court **DENIES** David's Motion to Dismiss Plaintiff's Bane Act claim.

### D.    Punitive Damages

Finally, David asks the Court to dismiss or strike Plaintiff's claim for punitive damages. ECF No. 87 at 7–8. He argues that courts may dismiss a request for punitive damages pursuant to Rule 12(b)(6) where they are not available as a matter of law. *Id.* However, "[a] growing number of district courts have concluded that Rule 12(b)(6) is generally inapplicable to damage prayers." *Mata v. Digit. Recognition Network, Inc.*, No. 21-CV-1485 JLS (BLM), 2022 U.S. Dist. LEXIS 54857, at *23-24 (S.D. Cal. Mar. 25, 2022) (citing *Sturm v. Rasmussen*, Case No.: 18-CV-01689-W-BLM, 2019 U.S. Dist. LEXIS 24504, 2019 WL 626167, at *3 (S.D. Cal. Feb. 14, 2019) (collecting cases)); *see also Mora v. City of Chula Vista*, No. 20cv779-GPC(AGS), 2021 U.S. Dist. LEXIS 176651, at *15 (S.D. Cal. Sep. 16, 2021) (noting a split among district courts since the Ninth Circuit's ruling in *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)). In any event, the Court is not persuaded that Plaintiff's prayer for punitive damages "is not appropriate and should be dismissed or stricken from the [Third Amended] Complaint." ECF No. 87 at 8. Here, Plaintiff seeks punitive damages in connection with her constitutional violation claims. TAC ¶¶ 185, 193, 207, 213. To recover punitive

damages against an individual under 42 U.S.C. § 1983, a plaintiff must show that the officer's conduct is "mitigated by evil motive or intent" or "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Ninth Circuit has further explained that "the standard for punitive damages under [Section] 1983 mirrors the standard for punitive damages under common law tort cases," which extends to "malicious, wanton, or oppressive acts or omissions." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citing *Wade*, 461 U.S. at 49).

Plaintiff alleges David knew Mr. Bonin's potassium levels were dangerously high such that Mr. Bonin could die if he was not dialyzed and yet David ended Mr. Bonin's dialysis early, failed to update the medical records so that other staff would know Mr. Bonin had not been properly dialyzed, and never re-tested Mr. Bonin's potassium levels or attempted to dialyze him again. These allegations, if true, plausibly support a finding that David's actions and inactions were at least recklessly indifferent to Mr. Bonin's rights. For this reason, the Court is not persuaded that Plaintiff's request for punitive damages is inappropriate. Accordingly, the Court **DENIES** David's Motion to dismiss or strike Plaintiff's request for punitive damages.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** David's Motion to Dismiss. David must file an answer to the Third Amended Complaint on or before **April 9, 2026**.

**IT IS SO ORDERED**.

Dated:  March 26, 2026

_____

Honorable Linda Lopez
United States District Judge

23cv2158-LL-MSB